UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WALTER LEE TODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:06-CV-01038-LSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the Social Security Administration ("SSA") on February 28, 2008.  (Doc. 24.)  Plaintiff Walter Lee Todd ("Todd") has sued SSA for race, sex, and disability discrimination, as well as retaliation with respect to his attempts at promotion, negative conduct reviews and performance evaluations, suspensions, and ultimate termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2611, *et seq.*  (Doc. 1.)

SSA has moved for summary judgment on all of Plaintiff's claims. The issues raised in Defendant's motion for summary judgment have been briefed by both parties and are now ripe for review. Upon full consideration of the legal arguments and evidence presented, SSA's motion for summary judgment will be granted in all respects.

II.     Facts.[1]

Plaintiff Todd, an African-American male, was employed by SSA from 1988 until May 1993 as a Teleservice Representative. Todd's position required him to answer telephone calls and assist Social Security beneficiaries with questions regarding benefits or help them schedule appointments with the agency.

Teleservice Representatives are supervised by a Unit Manager. Each unit generally had sixteen to twenty-five employees, and according to Todd, his unit's racial makeup was approximately 50-60% white and 40-50%

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

African-American.  The Unit Manager is supervised by a Section Manager.

During Plaintiff's employment with SSA, he worked for a total of six Unit Managers: Calvin Rumph (African-American male); Kay Leader (white female); Marty Hawkins (white male); Elizabeth McCormick (white female); Reginald Jackson (African-American male); and Andrew Chapura (white male).  Each of these Unit Managers counseled Todd at various times regarding numerous problems.  All six Unit Managers have submitted declarations describing Todd as confrontational and argumentative with management and/or co-workers.  They also detail issues they had with Todd's performance.  Leader, Hawkins, McCormick, Jackson, and Chapura all refused to recommend Plaintiff for a GS-7 promotion.  During most of the time period relevant to this case, Bonita Chaney (African-American female) served as Section Manager and supervised these Unit Managers.

In early 1993, Chapura learned that one of Todd's coworkers, Jearlene Jones, had submitted two letters to Chaney that accused Plaintiff of harassing her by staring at her and walking by her desk while making noises to get her attention.  Plaintiff previously filed a complaint against Jones on October 28, 1992, which accused her of purposely pushing his chair and

damaging his work papers.  Chapura met with Todd on February 22, 1993, and instructed Plaintiff to refrain from walking through the area behind Jones' desk.  Plaintiff denies that he was "instructed" not to walk in the area.  He says that there was some discussion, and Chapura "suggested" that he not walk behind Jones' desk.

Jones continued to complain that Todd was harassing her and passing by her desk for no reason.  Chapura held a formal interview with Plaintiff on April 8, 1993, to talk about the situation.  Chapura states that he again told Todd to avoid the area behind Jones' desk.  Plaintiff will only admit that the area behind Jones' desk was discussed.  Chapura issued written reports on April 8, 1993, and April 22, 1993, which detailed Jones' ongoing complaints and alleged Todd's disregard for his "instructions."

On April 23, 1993, Chapura proposed that Todd's employment with SSA be terminated for continuing to ignore his instructions to stay away from the area behind Jones' desk.  On May 24, 1993, Chaney issued a notice terminating Plaintiff's employment for failure to comply with Chapura's directives and previous misconduct.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

    A.   Title VII Discrimination Claims.

Todd contends that SSA unlawfully discriminated against him based on his race and gender, in violation of Title VII, when he was denied promotions, given negative conduct reviews and performance evaluations, suspended, and ultimately terminated. Yet, Plaintiff does not address each employment action individually in his response memorandum and fails to mention many of the disputed employment decisions in his legal argument.

Defendant maintains that Todd has not adduced sufficient evidence to support his claims, and has also moved to strike various exhibits submitted

by the plaintiff.  (Doc. 38.)  To the extent SSA seeks to strike the evidence from the record, the motion will be denied.  However, many of Defendant's arguments regarding the admissibility of the referenced exhibits are well-founded, and no opposition to the motion has been filed.[2]  The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.  Evidence that could not be reduced to admissible form at trial was rejected by this Court when making its final decision on Defendant's summary judgment motion. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

Because Todd has not submitted direct evidence of unlawful discrimination, we analyze his claim using the analytical framework set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of illegal discrimination.  Thereafter, the prima facie case creates a presumption of discrimination, which the employer must rebut with legitimate,

---

[2]The Court nevertheless assumed that Defendant's motion to strike is opposed by the plaintiff.

nondiscriminatory reasons for the employment action(s) at issue. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

As part of his prima facie case, Todd acknowledges that he "must show that his employer treated similarly situated employees outside his classification more favorably than [himself]." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). (Doc. 36 at 23.) "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Id.*; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

Todd simply has not identified the existence of any similarly situated non-minority employees that were treated more favorably than himself with

regard to any of the contested employment actions at issue. Because the Court has not been provided with admissible evidence that would allow it to compare Todd's treatment with that of specific white and/or female coworkers similarly situated in all relevant respects, Plaintiff's Title VII discrimination claims must be dismissed.

Moreover, with regard to Todd's assertion that he was unfairly denied a career ladder promotion to GS-7, he has not established that he was qualified for that promotion. *See Cooper v. Southern Co.*, 390 F.3d 695, 742-43 (11th Cir. 2004). Plaintiff gives his opinion that his performance merited the promotion, but the remaining record evidence says otherwise. Todd's personal opinion is insufficient to establish this element of his prima facie case. *Id.* at 743 (citing *Holifield*, 115 F.3d at 1564).

Furthermore, even if Plaintiff had established a prima facie case for each of the challenged employment actions, he has not proffered sufficient admissible evidence to show that Defendant's legitimate, nondiscriminatory reasons are pretext for *unlawful* discrimination. At best, Todd has shown that some supervisors did not like him and may have treated him differently because of that personal dislike. Title VII "is not a shield against harsh

treatment at the work place." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (quoting *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir. 1981)). "Personal animosity is not the equivalent of sex [or race] discrimination and is not proscribed by Title VII." *Id.* (citing *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Summary judgment will therefore be granted with regard to Plaintiff's claims that he was denied promotions, given negative conduct reviews and performance evaluations, suspended, and ultimately terminated due to race and/or sex discrimination.

    B.    Title VII Retaliation.

Todd also argues that he suffered retaliation for filing administrative EEO complaints regarding his alleged mistreatment at SSA. In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001). Recently, the U.S. Supreme Court clarified that a plaintiff does not need to

suffer employment-related adverse actions. Rather, federal anti-retaliation provisions encompass any employer actions that would be "materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2409 (2006).

To establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). Plaintiff, however, does not submit any legal argument or cite evidence to support a finding that the contested employment decisions in this case were causally related to his EEO complaints. (Doc. 36.)

In addition, Todd has not argued nor established that his administrative EEO complaints constitute statutorily protected activity. "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to his protest.'" *Holifield,* 115 F.3d at 1566 (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989)). However, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful

employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). This standard has been described by the Eleventh Circuit as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id.* at 1312 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). As stated above, Plaintiff's evidence suggests that some supervisors may have disliked Todd; however, Plaintiff has not adduced any admissible evidence showing that his administrative EEO complaints were made with an objectively and subjectively reasonable belief that SSA was engaged in unlawful employment actions. Therefore, Todd's Title VII retaliation claims will also be dismissed.

C.  Title VII Hostile Environment.

Plaintiff contends that he was the victim of a hostile work environment, but he does not explain in his response memorandum whether the alleged harassment was based on his race or sex.  Todd only argues that he "has given numerous instances of hostile work environment."  (Doc. 36 at 32.)  He then references Jones hitting his chair; Hawkins calling him a "butthole"; and McCormick telling him that she was "not going to take any more of his shit" and blocking him physically from leaving an office.  (*Id.*)

In order to establish a hostile environment claim in this circuit, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th 2002) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)).

Once again, Todd does not present any legal argument or evidence to establish his claim. Plaintiff has not provided this Court with any reason to conclude that the referenced instances of "harassment" were based on Todd's race or gender. He has also failed to show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment. As indicated by the defendant, "Title VII is not a federal 'civility code.'" *Mendoza*, 195 F.3d at 1245. Plaintiff has not established that the harassment he alleges he suffered invokes liability under Title VII; therefore, summary judgment will be granted with regard to his hostile environment claim.

D.   ADA Claim.

While Plaintiff includes in his Complaint the claim that he was discriminated against, in violation of the ADA, because of a visual handicap, he does not oppose SSA's motion for summary judgment on the ADA claim. In fact, Todd's response memorandum does not mention the ADA nor make any legal argument to support Defendant's liability under the ADA. (Doc. 36.) According to the law of this circuit, then, the argument is waived. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th

Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument). Moreover, there is insufficient evidence in the record to support the assertion that Todd's visual impairment constituted a "disability" under the law. Therefore, Plaintiff's ADA claim must also be dismissed.

V. Conclusion.

For the reasons set forth above, SSA's motion for summary judgment will be granted in all respects. A separate order will be entered.

Done this <u>16th</u> day of <u>July 2008</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297